IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MICHAEL L. SCHILER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-cv-00379-NKL |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Michael Schiler seeks review of the Administrative Law Judge's decision denying his application for Social Security benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is affirmed.

**I.     Background**

This case is Schiler's second appeal from a decision denying him Social Security benefits. Schiler was first denied benefits by an ALJ in 2011. The decision denying benefits was subsequently remanded for further consideration. The ALJ rendered a second decision denying Schiler benefits on February 13, 2014.

**A. Schiler's Medical History**

In 2008, Schiler was seen for fatigue, left arm pain, and depression. [Tr. 233]. He was diagnosed with anxiety, depression, and shoulder strain. *Id.* In 2010 Schiler began to seek more extensive treatment for arm and shoulder pain. In January 2010, Schiler's doctor noted that he had a good range of motion in his left shoulder and any pain was

from non-use. [Tr. 366]. In April 2010 Schiler went to the emergency room for right shoulder pain caused by mowing the lawn. [Tr. 388-91]. He reported that activities like cooking, showering, and mowing aggravated his shoulder. [Tr. 352]. In May 2010 he returned to the emergency room again for right shoulder pain. He was referred to a surgeon for possible surgery. He reported having difficulty finding a doctor to perform surgery. [Tr. 385].

In July 2010 Schiler fell off his tractor and landed on his right shoulder. [Tr. 379]. He underwent x-rays of his right shoulder and humerous, which showed comminuted right humeral head and neck fracture with mild displacement and mild angulation and grade 3-4 right AC joint separation. [Tr. 382-83]. He underwent right proximal humerous fracture surgery on July 23, 2010. [Tr. 397]. Schiler continued to see doctors for his shoulder pain throughout the remainder of 2010 and continually reported significant pain. Various doctors noted that his range of motion was restricted. By December, his proximal humerus was fully healed but he continued to have joint pain. [Tr. 420].

In January 2011, Schiler was given an injection of lidocaine and Kenalog by Dr. Matthew Smith, but the doctor declined to prescribe narcotics. [Tr. 851]. It was recommended that Schiler go for pain management. *Id*. In April 2011, he underwent an EMG and was assessed with right shoulder pain, neuralgia, neuritis, and radiculitis. [Tr. 432]. An EMG in May 2011 revealed right carpal tunnel syndrome of mild to moderate severity. [Tr. 430]. In July 2011, Schiler visited Dr. Smith again. He diagnosed

scapulothoracic crepitus but did not recommend any treatment. [Tr. 849]. In July 2011, Dr. Matthew Nadler performed a suprascapular nerve block. [Tr. 867].

In January 2012, Schiler returned to Dr. Smith due to his shoulder pain and requested removal of plate in his shoulder. [Tr. 880-81]. Dr. Smith documented that he did not recommend surgery and believed that it would not help relieve Schiler's pain. *Id.* On February 15, 2012, Schiler underwent surgery. He reported later that month that he was doing well and his pain was fairly well-controlled. [Tr. 895]. Schiler continued to seek treatment for pain throughout 2012. His range of motion was documented as significantly improved in May 2012. [Tr. 892]. In June 2012 he reported his pain as only three out of ten. [Tr. 936]. In August 2012, Dr. Barnhill diagnosed Schiler with post-traumatic glenohumeral arthritis and chronic AC separation. Dr. Barnhill recommended a corticosteroid injection. [Tr. 917]. In November 2012, Schiler underwent an MRI of the lumbar spine. The MRI revealed disc bulging at 5-1, mild annular bulging of the 4-5 disc without stenosis, and mild facet arthropathy from 2-3 through 5-1. [Tr. 928-29]. In December 2012, Schiler fell and an x-ray revealed multiple rib fracture. [Tr. 982].

In addition to his physical conditions, Schiler suffers from mental impairments. In February 2010, Schiler presented to Dr. Mehrunissa Ali for a psychiatric evaluation. [Tr. 321-24]. Dr. Ali noted that Schiler tended to lose his train of thought and his mood was anxious. *Id.* He was diagnosed with recurrent major depression, panic disorder with agoraphobia, and polysubstance dependence in remission. *Id.* He returned to Dr. Ali in May. Dr. Ali noted that Schiler sat in a hunched position and reported he was in pain. Schiler continually told his doctors throughout 2010 and 2011 that he felt depressed.

3

In December 2011, Schiler reported depression, bipolar, anxiety, loss of interest in things he used to enjoy, decreased motivation, racing thoughts, difficulty with sleep, low self-esteem, poor concentration, withdrawal from others, fear or anxiety around others, difficulty focusing, and chronic pain. [Tr. 1001]. He reported that he enjoyed watching TV and playing video games. [Tr. 1002]. Schiler's counselor, Lisa Rau, noted that Schiler had a slight delay in speech but was of at least average intelligence. [Tr. 1000]. In March 2012, Nurse Mary Chance diagnosed Schiler with recurrent major depressive disorder and insomnia. [Tr. 995-96]. At a follow up appointment with Nurse Chance in October 2012, Schiler reported that his sleep had improved and he walked at least three and one half miles per day. [Tr. 988].

### B. ALJ Decision

The ALJ denied Schiler's request for disability benefits, concluding that Schiler had the Residual Functional Capacity (RFC) to engage in substantial gainful activity. The ALJ concluded that despite Schiler's severe impairments of degenerative joint disease of the right shoulder status post ORIF in 2005, history of fractured humerus status post ORIF surgery in 2010, mild carpal tunnel syndrome, back pain, depression, and anxiety, he retained the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) with the ability to lift, carry, push or pull 20 pounds occasionally, 10 pounds frequently, sit 6 or 8 hours and stand/walk 6 of 8 hours, with no crawling, no climbing of ladders, ropes or scaffolds, and no above shoulder work with the right upper extremity, no kneeling or crouching, no power grasping or twisting with the right upper extremity, and no exposure to vibration; additionally, he is limited to repetitive work with no detailed instructions or tasks and no public interaction.

4

[Tr. 472].

In determining Schiler's RFC, the ALJ considered the numerous doctors' opinions of the record, as well as Schiler's own testimony regarding his disabilities. The ALJ afforded significant weight to the opinions of Dr. Keith Allen, who concluded that the claimant had no marked limitations in terms of mental functioning and mild limitations consistent with the RFC; Dr. Joseph Bleier, who noted only mild concentration and memory deficits and stated that Schiler's symptoms were expected to improve with treatment; Dr. Rob McCullough, who found that Schiler had no limitations with respect to his lower extremities, and could lift and carry 15-20 pounds; and Dr. Geoffrey Sutton, who identified no areas of marked mental limitations. He did not assign much weight to the opinions of Nurse Chance, who filled out an RFC evaluation form with Schiler, and Dr. Ronald Zipper, whose opinion was inconsistent with the record and rendered only one month after the alleged onset date in 2009. The ALJ further concluded that Schiler's description of his disabilities was not credible. A vocational expert testified at the administrative hearing that an individual with Schiler's RFC could work at jobs existing in significant numbers in the national economy.

## II.  Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some

5

evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Schiler argues that the ALJ erred in (1) failing to include Schiler's carpal tunnel syndrome and lumbar impairment as severe impairments, (2) failing to properly evaluate Schiler's credibility, and (3) evaluating Schiler's RFC. The Court concludes that the ALJ properly weighed the evidence and opinions, and substantial evidence supports his 2014 determination that Schiler is not entitled to benefits.

### A. Evaluation of Schiler's Severe Impairments

Schiler contends that he suffers from carpel tunnel syndrome and lumbar impairment, which should have been included as "severe impairments" at step two of the ALJ's analysis. A claimant need only meet a "de minimus" standard to prove that an impairment constitutes a severe impairment. An impairment is severe unless it is so minor that it would only be expected to create a "slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Bowen v. Yuckert*, 482 U.S. 137, n.12 (1987).

Schiler appears to have misread the administrative record and based his argument on the ALJ's 2011 determination that Schiler was not entitled to benefits, wherein the ALJ did not include Schiler's carpal tunnel syndrome and lumbar spine impairment as

6

severe impairments.  [Tr. 13].  However, the ALJ's decision denying benefits in 2014 – the decision now before the Court for review – recognized that Schiler suffered from severe impairments of "mild carpal tunnel syndrome" and "back pain."  [Tr. 470].  The ALJ's decision adequately recognizes Schiler's carpal tunnel syndrome and lumbar spine impairment as severe impairments.

### B.  Evaluation of Schiler's Credibility

Schiler contends that the ALJ used isolated portions of the record to conclude that his complaints were not credible, and that he failed to link his findings regarding Schiler's activities of daily living to the credibility and RFC determinations.

Credibility determinations are left primarily to the ALJ.  *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).  In analyzing a claimant's subjective complaints, the ALJ is to consider the entire record including the claimant's medical records, third party statements, the claimant's statements, and factors including (1) the claimant's activities of daily living; (2) the duration, frequency, and intensity of pain and other symptoms; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

As discussed above, Schiler errantly relies on citations to the ALJ's 2011 decision to justify his argument, rather than noting flaws in the 2014 decision.  The ALJ's 2014 decision sets out numerous reasons to discount Schiler's credibility.  Schiler admitted that he was laid off from his last job for reasons unrelated to his impairment, and when asked if he would like to be employed, replied "no."  [Tr. 475].  He attends school, drives, plays

7

video games, mows his lawn, and rides a tractor. *Id.* He is able to do limited housework, can fix dinner, watch television, use a computer for email, and shop. *Id.* He testified to the ALJ in February 2014 that he could only carry "maybe" five pounds, but in 2013 reported to his doctor that he could carry 15-20 pounds. [Tr. 476]. The record provides no basis for such a drop, and Schiler's treating physician indicated that his upper extremities were expected to continue to improve after the 2013 appointment in which he stated he could carry up to 20 pounds. *Id.*

Schiler argues that these functional abilities are not indicative of his true ability to sustain employment, and that the ALJ overstates his actual abilities as he requires physical accommodations for many of the above described tasks. Despite requiring accommodations, the record is clear that Schiler was able to maintain a fairly ordinary and mobile lifestyle. For example, in October 2012, Schiler reported walking three and one half miles per day. Moreover, Schiler's medical records simply do not support Schiler's complaints regarding his level of impairment. In March 2013, Dr. McCullough observed that Schiler had no limitations in standing, walking, lifting, carrying, manipulating with his fingers, crouching, stooping, crawling, or kneeling. Dr. McCullough observed that Schiler lifted a twenty-five pound chair without problems. Though Schiler has injured his arm and shoulder multiple times since 2009, it has consistently healed from intermittent injuries, and the only ongoing problems are the result of the degenerate diseases that affect the area, which have been controlled by pain medication and treatment. After Schiler had plate removed from his shoulder in 2012, he reported that it was improved and his pain was significantly decreased. In March 2013,

Dr. McCullough noted that Schiler's shoulder had a full range of motion. These observations do not support a finding of the level of debilitation claimed by Schiler, and the ALJ's decision to discredit Schiler's testimony is supported by substantial evidence.

### C. RFC Determination

Schiler contends that the ALJ erred in failing to evaluate and assign weight to the medical opinions in the record.

Schiler lists a number of doctors' opinions he argues the ALJ should have discussed. Specifically, he argues that the opinions of Dr. McCullough and Dr. Bleier should have been considered and weighed. The ALJ discussed both opinions extensively in his 2014 decision. Schiler further argues that an opinion rendered by Beverly Moore should have been specifically considered and weighed. As Beverly Moore is a non-physician "single decision maker," it was not necessary for the ALJ to assign specific weight to this opinion. Furthermore, while Moore's opinion is not specifically discussed in the ALJ's decision, it mirrors the RFC almost exactly. Moore opined that Schiler could stand, walk, and/or sit for six hours in an eight hour workday, was limited in upper extremities in ability to push and/or pull, and could never climb ladders, ropes, scaffolds, or crawl. All of these limitations are included in the RFC. As such, the ALJ did not err in failing to discuss Moore's opinion.

Schiler next contends that Nurse Chance's mental RFC form should have been assigned weight and considered in evaluating his disabilities. The ALJ discussed this document in his opinion, giving it "little weight because it was completed by a non-acceptable medical source and it was 'filled out with [the] client.'" [Tr. 476]. Moreover,

the opinion conveyed in the form is entirely inconsistent with the remainder of the medical opinions of the record, which indicate that Schiler had only mild psychological limitations. It also conflicts with Nurse Chance's own evaluation of Schiler with a GAF score of 65.

The ALJ also provided an adequate "narrative bridge" between the record and Schiler's RFC. The RFC accommodated for Schiler's mental impairments by providing that "he is limited to repetitive work with no detailed instructions or tasks and no public interaction." These limitations are consistent with the limitations set forth in Drs. Allen, Sutton, and Bleier's opinions. The ALJ's 2014 opinion contains a thorough description of the medical evidence in the case and the relationship between that evidence and the RFC. The ALJ's determination that Schiler is capable of maintaining substantial gainful employment despite his limitations is supported by substantial evidence.

## IV.  Conclusion

For the reasons set forth above, the ALJ's decision is affirmed.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  January 9, 2015
Jefferson City, Missouri

10

Case 4:14-cv-00379-NKL   Document 14   Filed 01/09/15   Page 10 of 10